### ATTORNEY GENERAL *vs.* JOHN J. DOUGLASS.

Suffolk.   January 16, 1907. — March 2, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Municipal Corporations.   Boston.   Civil Service Law.   Words,* "City council."

R. L. c. 19, § 9, exempting from the operation of the rules made by the civil
service commissioners "officers . . . .whose appointment is subject to confir-
mation by the executive council or city council of any city," does not include
in such exemption a deputy superintendent of streets in charge of the ferry
division of the street department of the city of Boston, who is appointed by the
mayor subject to confirmation by the board of aldermen.

A deputy superintendent of streets in charge of the ferry division of the street
department of the city of Boston is not the head of a principal department of a
city within the meaning of the provision of R. L. c. 19, § 9, exempting such
heads of departments from the operation of the rules made by the civil service
commissioners.

INFORMATION, filed on June 27, 1906, under R. L. c. 19, § 34,
by the Attorney General at the relation of the civil service com-
missioners, to compel one John J. Douglass to show by what
warrant he held the office or employment of deputy superintend-
ent in charge of the ferry division of the street department of
the city of Boston.

In the Superior Court the case was submitted to *Fessenden,* J.
upon the pleadings and an agreed statement of facts.   He found
the facts to be as set forth in the agreed statement of facts, and
ruled *pro forma* that on these facts the information should be
dismissed.   At the request of the parties he reported the case
for determination by this court.   If the ruling was right, the in-
formation was to be dismissed; otherwise. such order was to be
made as law and justice required.

The rules made by the civil service commissioners for the
classification of the service contain the following:

"Rule 6.

"1.   The offices and places to be filled under these rules shall
be classified in two divisions: the first to be known as 'The
Official Service' of the Commonwealth and the several cities
thereof; the second as 'The Labor Service.'

" First Division.
Rule 7.
" 1. There shall be two schedules under the first division, known as Schedule A and Schedule B."

" Schedule B.
" There shall be the following classes in Schedule B."

Then follows an enumeration of fourteen classes of which the eleventh is as follows :

" Class 11. Superintendents, assistant superintendents, deputies and persons, other than the chief superintendents of departments, performing any of the duties of a superintendent in the service of any city of the Commonwealth."

" Requisition and Certification.
Rule 21.
" 1. Whenever there is a vacancy to be filled in the classified service, the appointing officer shall make requisition upon the commissioners for the names of eligible persons."

The agreed statement of facts contained the following :

Under the authority of St. 1869, c. 155, the city of Boston purchased the ferries between the city proper and East Boston and since 1870 has continued to operate them and collect tolls for the ferriage of vehicles and passengers.

From 1870 until 1895 the ferry department was entirely distinct and separate from every other department, sometimes being managed by a board of directors, sometimes by a board of three commissioners, and just before 1895 by an officer called the superintendent of ferries.

St. 1895, c. 449, § 25, provides as follows :

" The superintendent of streets of said city [Boston] shall hereafter have the care and management of the ferries owned by said city. . . . Said superintendent shall have and exercise all the powers and duties conferred by the ordinances of said city upon the superintendent of ferries of said city. . . . The ferry department and the office of superintendent of ferries of said city are hereby abolished."

This act was approved on June 1, 1895. From that date the ferries have been under the charge of a deputy appointed by the superintendent of streets. The superintendent of streets, under

the statutes and the ordinances of the city, has charge of the construction and repairing of streets and sidewalks.    The deputy superintendent of the ferry division of the street department has no power or authority over streets.

A separate appropriation for the ferry department has been made each year by the city government, the tolls and additional sums of money being appropriated every year for the maintenance of the ferries.    In years when new boats were bought or ferry houses and slips were enlarged, rebuilt or repaired large sums of money have been raised by loan or taxation for the ferries in addition to the regular appropriations.    The appropriation for the ferry division of the street department for the fiscal year 1905–1906 was $243,000.

The deputy superintendent of streets in charge of the ferry division never has been appointed from a civil service list.    By the city charter of Boston the board of aldermen have the power of confirming certain officers appointed by the mayor, the other portion of the city council known as the common council having no such power.

St. 1885, c. 266, § 1, provides as follows:

" The mayor of the city of Boston shall appoint, subject to confirmation by the board of aldermen, all officers and boards now elected by the city council or board of aldermen, or appointed by him subject to confirmation, and all whose offices may hereafter be established by the city council or board of aldermen, for such terms of service respectively, as are or may be fixed by law or ordinance; and he may remove any of said officers or members of such boards for such cause as he shall deem sufficient and shall assign in his order for removal."

On February 21, 1906, an ordinance was enacted by the city council of Boston which provided, among other things, that the superintendent of streets, through a deputy superintendent of the ferry division to be appointed by the mayor subject to the confirmation of the board of aldermen, should have the care and management of the ferries.    Acting under the power supposed to be conferred upon him by this ordinance the mayor of Boston on April 30, 1906, appointed the defendant deputy superintendent of streets in charge of the ferry division, and the board of aldermen confirmed such appointment on May 7, 1906.    The defend-

ant qualified and entered upon the discharge of the duties of the office on that day, and since that time has continued to perform them.

No requisition was made upon the civil service commissioners and the defendant was not certified by them in accordance with their rules.

The Attorney General contended that the defendant had no legal right or authority to perform the duties of the office or position. The defendant contended that his office or position was not within any rule of the civil service commission, but was exempt under the provision of R. L. c. 19, § 9.

*F. T. Field*, Assistant Attorney General, for the plaintiff.

*T. M. Babson*, for the defendant.

LORING, J.   We see no reason for not giving their usual meaning to the words "city council" in R. L. c. 19, § 9.   In our opinion they mean the whole city council, that is to say, both branches when there are two, as in the case of the city of Boston (the city here in question), and one branch when there is but one branch.

The purpose of the clause here in question seems to be to take out of the operation of civil service rules not only officers elected by the people or by those who represent the people, to wit, the city council of a city, but those whose appointment is confirmed by those who represent the people.   The city council is the proper representative of the whole people and is to a city what a town meeting is to a town, while the mayor and aldermen correspond to the selectmen of a town and not to the inhabitants of a town assembled in town meeting.

A consideration of the practical application of this construction in case of city governments under charters like that granted to Boston by St. 1885, c. 266 (if that consideration is permissible in passing upon the construction of an earlier statute), does not lead to a different result.   The charter of the city of Boston of 1885 gives the power and puts the responsibility for the administration of the executive functions of the city upon the mayor, and the confirmation of appointments by the mayor is given to the board of aldermen.   See St. 1885, c. 266, § 1.   And the same is true of similar charters granted to other cities.   But since the appointment of heads of principal departments of all

cities is excepted from civil service rules by another clause of c. 19, § 9, no argument can be adduced from these subsequent charters which leads us to suppose that the Legislature did not mean what it said when it confined this exception from the general rule to appointments confirmed by the city council.

By St. 1895, c. 449, § 25, the ferries owned by the city of Boston were put under the care and management of the superintendent of streets. The office of deputy superintendent in charge of the ferry division created by ordinance of February 21, 1906, is not a head of one of the principal departments of the city within R. L. c. 19, § 9.

The result is that that office comes within the civil service rules ; and there must be

*Judgment of ouster.*